## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAMZA GHAITH, Derivatively on Behalf of Nominal Defendant ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, | Case No. |
| Plaintiff, | |
| v. | |
| LABEED DIAB, JOSEPH JORDAN, JOHN L. LARSEN, JOHN MALDONADO, CARMINE PETRONE, JOANNE M. BURNS, CHRISTOPHER KRUBERT, JAMES E. PARISI, ANDREW A. MCKNIGHT, JOSHUA A. PACK, AARON F. HOOD, CARMEN A. POLICY, MARC FURSTEIN, LESLEE COWEN, RAFEKET RUSSAK-AMINOACH, and SUNIL GULATI. | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, | |
| Nominal Defendant, | |

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Plaintiff Hamza Ghaith ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, ATI Physical Therapy, Inc. ("ATI" or the "Company") f/k/a Fortress Value Acquisition Corp. II ("FVAC"), against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, contribution for violations of Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act"), and violations of Section 14(a) of the Exchange Act. Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by ATI with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.     NATURE AND SUMMARY OF THE ACTION

1.     FVAC was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.

2.     ATI is an outpatient physical therapy company. It owns and operates nearly 900 physical therapy clinics across 25 states. Its clinics offer a variety of services, including physical therapy to treat spine, shoulder, knee, and neck injuries or pain; work injury rehabilitation services; hand therapy; and other specialized treatment services.

3.     On June 17, 2021, ATI became public through a series of transactions with FVAC (the "Business Combination").

4.     On July 26, 2021, before the market opened, ATI reported its financial results for second quarter 2021, the period in which the Business Combination was completed. Among other things, ATI reported that "the acceleration of attrition among [its] therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our labor costs." Though ATI was implementing certain remedial actions, the Company reduced its fiscal 2021 forecast due to the foregoing factors.

5. On this news, the Company's share price fell $3.62, or 43%, to close at $4.72 per share on July 26, 2021, on unusually heavy trading volume. The share price continued to decline the next trading session by as much as 16%.

6. These revelations precipitated the filing of a consolidated securities class action in this District against ATI and certain of defendants, captioned *Burbige, et al. v. ATI Physical Therapy, Inc., et al.*, 1:21-cv-04349 (the "Securities Class Action").

7. Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board. The Board is currently composed of seven members, five of whom are named in this action. As alleged herein, McKnight participated in the negotiation and finalization of the Business Combination, and the four members of the Audit Committee failed to exercise oversee risk management of the Company, allowing misleading statements to be disseminated. Thus, more than half the members would be interested in a demand to investigate their own wrongdoing.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 14(a) of the Securities Exchange Act of 1934. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

### III.    PARTIES

**Plaintiff**

10.    Plaintiff Hamza Ghaith purchased 190 shares of ATI on February 22, 2021 and has continuously owned his stock since that date.

**Nominal Defendant**

11.    Nominal Defendant ATI is a Delaware corporation with its principal executive offices located at 790 Remington Boulevard, Bolingbrook, IL 60440.  The Company's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "ATIP," and its redeemable warrants trade on the NYSE under the symbol "ATIP WS." Each whole redeemable warrant is exercisable for one share of Class A common stock at an exercise price of $11.50 per share.

**Defendants**

12.    Defendant Labeed Diab ("Diab") served as Chief Executive Officer ("CEO") and a director of ATI from 2019 to August 9, 2021. He is named as a defendant in the Securities Class Action.

13.    Defendant Joseph Jordan ("Jordan") has served as Chief Financial Officer ("CFO") of ATI since 2019. He is named as a defendant in the Securities Class Action.

14.    Defendant John L. Larsen ("Larsen") has served as Chair of the Board of ATI since prior to the Business Combination. He is a member of the Audit Committee.

15.    Defendant John Maldonado ("Maldonado") has served as a director of ATI since 2016. He is a member of the Audit Committee.

16.    Defendant Carmine Petrone ("Petrone") has served as a director of ATI since 2016.

17.    Defendant Joanne M. Burns ("Burns") has served as a director of ATI since 2021 (prior to the Business Combination). She is a member of the Audit Committee.

18. Defendant Christopher Krubert ("Krubert") has served as a director of ATI since 2016.

19. Defendant James E. Parisi ("Parisi") has served as a director of ATI since 2021 (prior to the Business Combination). He is Chair of the Audit Committee.

20. Defendant Andrew A. McKnight ("McKnight") served as CEO and director of FVAC from its inception until the Business Combination. He has served as a director of ATI since the Business Combination. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the definitive proxy statement dated May 14, 2021 (the "Proxy Statement"). He is named as a defendant in the Securities Class Action.

21. Defendant Joshua A. Pack ("Pack") served as Chairman of the Board of FVAC from its inception until the Business Combination. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. He is named as a defendant in the Securities Class Action.

22. Defendant Aaron F. Hood ("Hood") served as a director of FVAC from its inception until the Business Combination. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. He is named as a defendant in the Securities Class Action.

23. Defendant Carmen A. Policy ("Policy") served as a director of FVAC from its inception until the Business Combination. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. He is named as a defendant in the Securities Class Action.

24. Defendant Marc Furstein ("Furstein") served as a director of FVAC from its inception until the Business Combination. He solicited and/or permitted the use of his name to

solicit consent or authorization for the Business Combination by issuing the Proxy Statement. He is named as a defendant in the Securities Class Action.

25.     Defendant Leslee Cowen ("Cowen") served as a director of FVAC from its inception until the Business Combination. She solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. She is named as a defendant in the Securities Class Action.

26.     Defendant Rafeket Russak-Aminoach ("Russak-Aminoach") served as a director of FVAC from its inception until the Business Combination. She solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. She is named as a defendant in the Securities Class Action.

27.     Defendant Sunil Gulati ("Gulati") served as a director of FVAC from its inception until the Business Combination. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. He is named as a defendant in the Securities Class Action.

28.     Defendants Diab, Jordan, Larsen, Maldonado, Petrone, Burns, Krubert, Parisi, and McKnight are sometimes referred to hereinafter as the "ATI Defendants." Defendants McKnight, Pack, Hood, Policy, Furstein, Cowen, Russak-Aminoach, and Gulati are sometimes referred to hereinafter as the "FVAC Defendants." Defendants Diab, Jordan, Larsen, Maldonado, Petrone, Burns, Krubert, Parisi, McKnight, Pack, Hood, Policy, Furstein, Cowen, Russak-Aminoach, and Gulati are sometimes referred to hereinafter as the "Individual Defendants."

## IV.     DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.     Fiduciary Duties

29.     By reason of their positions as officers, directors, and/or fiduciaries of ATI and because of their ability to control the business and corporate affairs of ATI, at all relevant times,

the Individual Defendants owed ATI and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage ATI in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of ATI and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to ATI and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

30.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of ATI, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with ATI, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

31.     To discharge their duties, the officers and directors of ATI were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of ATI were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**B.     Audit Committee Charter**

32.     The charter for the Audit Committee charges members with responsibility for, among other things, "the performance of [ATI's] internal audit function and systems of internal control over financial reporting and disclosure controls and procedures."

33.     Specifically regarding risk management, the charter states that the Audit Committee shall:

> . . . review and discuss with management, the head of the Company's Enterprise Risk Management ("ERM") program, the head of the internal audit function (as applicable) and the independent auditor any significant risks or exposures, (including litigation, financial, and cybersecurity risks) and the Company Group's underlying policies with respect to risk assessment and risk management, and assess the steps management has taken to monitor and control such risks, except with respect to those risks for which oversight has been assigned to other committees of the Board or retained by the Board; and review the Company's annual disclosures concerning the role of the Board in the risk oversight of the Company; . . .

**V.     SUBSTANTIVE ALLEGATIONS**

**A.     Background**

34.     FVAC was a special purpose acquisition company formed for the purpose of effect purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses. It completed its initial public offering ("IPO") on August 14, 2020, selling 34.5 million units at $10.00 per unit. Each unit consists of one share of FVAC Class A common stock and one-fifth of one redeemable public warrant of FVAC, whereby each public warrant entitles the holder to purchase one share of FVAC Class A common stock at an exercise price of $11.50 per share.

35.     FVAC had considerable discretion in identifying and consummating a business combination, subject to three general limitations imposed by the Amended and Restated Certificate of Incorporation:

- *First*, FVAC must acquire a target business with a fair market value equal to at least 80% of the net assets held in the Trust Account following the IPO (net of amounts disbursed for working capital and excluding the amount of any deferred underwriting discount);

- *Second*, FVAC only had 24 months from the closing date of the IPO to complete a business combination, or else its corporate existence would cease, except for purposes of winding up its affairs and liquidating.  As such, FVAC was required to hold the approximately $345 million of proceeds from its IPO in a trust account, which were to be released only upon the consummation of a business combination or liquidation.

- *Third*, if FVAC's stockholders approved an amendment to the Certificate of Incorporation that would affect the substance or timing of FVAC's obligation to redeem 100% of the public shares if FVAC did not complete a business combination on time, FVAC was required to provide the holders of its public shares with the opportunity to redeem all or a portion of their public shares upon approval of any such amendment.

36.     ATI is an outpatient physical therapy company. It owns and operates nearly 900 physical therapy clinics across 25 states. Its clinics offer a variety of services, including physical therapy to treat spine, shoulder, knee, and neck injuries or pain; work injury rehabilitation services; hand therapy; and other specialized treatment services.

37.     On February 21, 2021, FVAC announced its agreement to take ATI public.

38.     On June 17, 2021, ATI became public via the Business Combination.

**B.      The Individual Defendants Caused the Company to Issue Materially Misleading Statements**

39.     On April 1, 2021, the Individual Defendants caused the Company to file additional proxy materials with the SEC with PowerPoint slides for ATI's Analyst Day presentation. Regarding labor costs, the Company stated that in fiscal 2020, it made "[c]ontinued improvements in clinical labor management model to allow providers to practice at the top of their respective licenses" and ATI "Accelerated Enhancements During COVID," including "Accelerated [its] staffing strategy." It also claimed that "ATI is the Employer of Choice for PT Clinicians," touting its retention of physical therapists:






40.     The above statements in ¶ 39 were materially misleading because they failed to disclose: (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; and (4) that, as a result of the labor shortage, the Company would open fewer new clinics.

41.     On May 14, 2021, the FVAC Defendants filed the Proxy Statement on Schedule 14A, soliciting votes in favor of the Business Combination of FVAC and Wilco Holdco. The Proxy Statement purported to warn that the Company's labor costs "*may* increase," stating in relevant part:

> ### *The Company's facilities face competition for experienced physical therapists and other clinical providers that may increase labor costs and reduce profitability.*
>
> The Company's ability to attract and retain clinical talent is critical to its ability to provide high quality care to patients and successfully cultivate and maintain strong relationships in the communities it serves. If the Company cannot recruit and retain its base of experienced and clinically skilled therapists and other clinical providers, management and support personnel, its business may decrease and its revenues may decline. The Company competes with other healthcare providers in recruiting and retaining qualified management, physical therapists and other clinical staff and support personnel responsible for the daily operations of its business, financial condition and results of operations.
>
> The Company may also experience increases in its labor costs, primarily due to higher wages and greater benefits required to attract and retain qualified healthcare personnel, and such increases may adversely affect the Company's profitability. Furthermore, while the Company attempts to manage overall labor costs in the most efficient way, its efforts to manage them may have limited effectiveness and may lead to increased turnover and other challenges.

42.     The above statements in ¶ 41 were materially misleading because they failed to disclose: (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the

Company faced difficulties retaining therapists and incurred increased labor costs; and (4) that, as a result of the labor shortage, the Company would open fewer new clinics.

43.     On May 20, 2021, ATI issued a press release announcing its first quarter 2021 financial results, stating in relevant part:

> ". . . While certain geographies currently exceed 100% of pre-COVID visit volumes (2019 comparative), others are still in process of recovering. Across our portfolio, visit volumes were in the high 70%'s of pre-COVID levels as we entered 2021, increasing to approximately 83% as we exited April 2021," said Labeed Diab, Chief Executive Officer of ATI Physical Therapy. . . .

> "As we look ahead to the remainder of 2021, we are focused on accelerating hiring to serve outsized demand in specific markets, continuing our growth with a fast pace of new clinic openings and new potential strategic partnerships, and maintaining a high NPS score above 75," concluded Mr. Diab

> "As visits increased each month, *we were able to better leverage fixed costs and improve labor productivity. As volume continues to recover, we are excited to fully utilize our platform and deliver margin improvements*," said Joe Jordan, Chief Financial Officer of ATI Physical Therapy.

44.     The above statements in ¶ 43 were materially misleading because they failed to disclose: (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; and (4) that, as a result of the labor shortage, the Company would open fewer new clinics.

45.     On May 20, 2021, FVAC filed additional proxy materials with the SEC with ATI's financial results for first quarter 2021. It stated that, in response to reduced visit volumes during the coronavirus pandemic, "the Company implemented measures to reduce labor-related costs in relation to the reduced visit volumes through reduced working schedules, voluntary and involuntary furloughs and headcount reductions." However, beginning first quarter 2021, visit volumes rebounded and "the Company continues to match its clinical staffing levels accordingly." As a result, "[a]s of March 31, 2021, no Company employees remained on furlough."

46.     The above statements in ¶ 45 were materially misleading because they failed to disclose: (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; and (4) that, as a result of the labor shortage, the Company would open fewer new clinics.

47.     On May 24, 2021, FVAC filed additional proxy materials with the SEC with PowerPoint slides that ATI presented at a healthcare conference in May 2021. Among other things, the presentation stated that the "Key Focus for Remainder of 2021" included "accelerate[d] hiring to serve outsized demand" and "continue to grow through new clinic openings." It also included a slide touting a "Clear Path to $200+ million of [Adjusted] EBITDA and Beyond" that stated the Company would achieve "significant labor savings through more productive staffing model." Specifically, it stated:



48.     The same May 2021 presentation further stated the Company's purported visibility into 2022 expected EBITDA, including based on "clinic staffing optimization." Specifically, it stated:



49.     The above statements in ¶¶ 47-48 were materially misleading because they failed to disclose: (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; and (4) that, as a result of the labor shortage, the Company would open fewer new clinics.

**C.      The Business Combination is Approved Pursuant to the Misleading Proxy Statement**

50.     On June 17, 2021, ATI announced that it had completed the Business Combination in a press release that stated, in relevant part:

> ATI Physical Therapy, Inc. ("ATI" or the "Company"), a portfolio company of Advent International ("Advent") and one of the nation's largest providers of outpatient physical therapy services, has completed its business combination with

Fortress Value Acquisition Corp. II ("FVAC II") (NYSE: FAII), a special purpose acquisition company.

The transaction, which was approved on June 15, 2021 by FVAC II's shareholders, further positions ATI to lead the rapidly growing physical therapy industry, with an emphasis on delivering predictable outcomes for patients with musculoskeletal (MSK) issues. Beginning June 17, 2021, the Company will operate as "ATI Physical Therapy, Inc.," and ATI's shares of Class A common stock will trade on the New York Stock Exchange ("NYSE") under the symbol "ATIP."

### D. The Truth Fully Emerges

51. On July 26, 2021, before the market opened, ATI reported its financial results for second quarter 2021, the period in which the Business Combination was completed. Among other things, ATI reported that "the acceleration of attrition among [its] therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our labor costs." Though ATI was implementing certain remedial actions, the Company reduced its fiscal 2021 forecast due to the foregoing factors. Specifically, ATI issued a press release that stated, in relevant part:

> "I would like to thank our nationwide team for their dedication, service and tireless effort providing the highest quality clinical care to our patients that makes ATI a leader in the large and growing physical therapy industry," said Labeed Diab, Chief Executive Officer. "***We are seeing growing demand for ATI's services, and visit volume increased during the second quarter. However, the acceleration of attrition among our therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our expectations for labor costs.*** We are implementing a range of actions related to compensation, staffing levels and other items to retain and attract therapists across our platform to meet our currently underserved patient demand. ***We expect therapist headcount to be below previously anticipated levels for 2021 which, combined with elevated costs for therapists and an unfavorable revenue mix, has caused us to reduce our forecast for 2021.*** We continue to have confidence in the underlying fundamentals driving our business and our ability to leverage our strong position in the market to drive growth and value over time."

*     *     *

**2021 Earnings Forecast**

For full year 2021, ATI is now projecting revenue to be in the range of $640 million to $670 million and Adjusted EBITDA to be in the range of $60 million to $70 million, down from $731 million and $119 million, respectively. ATI does not intend to provide revenue guidance as a future guidance metric. The revised expectations reflect the impact of the following developments which are partially offset by continued strong demand for ATI's services:

- The acceleration of attrition in the second quarter and continuing into the third quarter caused, in part, by changes made during the COVID-19 pandemic related to compensation, staffing levels and support for clinicians. ATI has taken swift actions to offset those changes, but the company expects the impact of attrition in the second and third quarters will impact overall profitability for the year.

- Labor market dynamics that increased competition for the available physical therapy providers in the workforce, creating wage inflation and elevated employee attrition at ATI, negatively affecting our ability to capitalize on continued customer demand.

- Decrease in rate per visit primarily driven by continuing less favorable payor and state mix when compared to pre-pandemic profile, with general shift from workers compensation and auto personal injury to commercial and government, and further impacted by mix-shift out of higher reimbursement states.

***Largely in response to the accelerated attrition, ATI is lowering its estimate for new clinic openings, (i.e., de novo and acqui-novo clinics), to be in the range of 55 to 65 clinics from 90 clinics.*** Our ability to achieve our revised forecast for the remainder of 2021 depends upon a number of factors, including the success of a number of steps being taken to significantly reduce attrition of physical therapists and significant hiring of physical therapists

The Company has determined that the revision to its 2021 forecast constitutes an interim triggering event that requires further analysis with respect to potential impairment to goodwill and trade name intangible assets. ***Accordingly, the Company is currently performing interim quantitative impairment testing during the third quarter of 2021***. If it is determined that the fair value amounts are below the respective carrying amounts, the Company will record an impairment charge which could be material.

52.    On this news, the Company's share price fell $3.62, or 43%, to close at $4.72 per share on July 26, 2021, on unusually heavy trading volume. The share price continued to decline the next trading session by as much as 16%.

## VI.    DAMAGES TO THE COMPANY

53.    As a direct and proximate result of the Individual Defendants' conduct, ATI has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

    a.  Legal fees incurred in connection with the Securities Class Action;

    b.  Any funds paid to settle the Securities Class Action; and

    c.  Costs incurred from compensation and benefits paid to the defendants who have breached their duties to ATI.

54.    In addition, ATI's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

55.    The actions complained of herein have irreparably damaged ATI's corporate image and goodwill.  For at least the foreseeable future, ATI will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that ATI's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.    DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

56.    Plaintiff brings this action derivatively in the right and for the benefit of ATI to redress injuries suffered, and to be suffered, by ATI as a direct result of breaches of fiduciary duty by the Individual Defendants, contribution for violations of Section 10(b) of the Exchange Act, and violations of Section 14(a) of the Exchange Act.  ATI is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

57.     Plaintiff will adequately and fairly represent the interests of ATI in enforcing and prosecuting its rights.

58.     Plaintiff has continuously been a shareholder of ATI at times relevant to the wrongdoing complained of and is a current ATI shareholder.

59.     When this action was filed, ATI's Board of Directors consisted of seven directors: defendants Larsen, Maldonado, Petrone, Burns, Krubert, Parisi, and McKnight. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, for the reasons set forth below.

**Defendant McKnight**

60.     At all relevant times, McKnight was FVAC's CEO, and therefore was not independent under NYSE listing rules.  As an employee and director of FVAC, McKnight was substantially involved with the negotiation and finalization of the Business Combination, as detailed in the Proxy Statement. Therefore, he knew or should have known of the attrition of ATI's clinicians and the increasing labor costs. Moreover, as CEO and as alleged herein, McKnight personally issued the misleading statements alleged herein and is named as a defendant in the Securities Class Action.  As a result, McKnight would be interested in a demand regarding his own wrongdoing, and demand is futile as to him.

**Defendants Larsen, Maldonado, Burns, and Parisi**

61.     Larsen, Maldonado, Burns, and Parisi served as the members of the Audit Committee of ATI at all relevant times, including prior to the Business Combination.  As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its risk management.  As alleged herein, Larsen, Maldonado, Burns, and Parisi failed to oversee the risks impacting the Company, namely the clinician attrition, allowing

the materially misleading statements to be disseminated in ATI's SEC filings and other disclosures. Thus, Larsen, Maldonado, Burns, and Parisi breached their fiduciary duties and are not disinterested, and demand is excused as to them.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

62.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

63.     Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of ATI's business and affairs, particularly with respect to issues as fundamental as public disclosures.

64.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of ATI.

65.     In breach of their fiduciary duties owed to ATI, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

66.     In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly represent the success of its lead drug candidate, imetelstat.

67.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, ATI has sustained and continues to sustain significant damages. Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in

the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

**(Against Defendants Diab, Jordan, and McKnight for Contribution
For Violations of Sections 10(b) and 21D of the Exchange Act)**

68.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69.     The conduct of Defendants Diab, Jordan, and McKnight, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

70.     ATI is named as a defendant in related securities fraud lawsuit that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If ATI is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

71.     As officers, directors and otherwise, Defendants Diab, Jordan, and McKnight had the power or ability to, and did, control or influence, either directly or indirectly, ATI's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

72.     Defendants Diab, Jordan, and McKnight are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

73.     Defendants Diab, Jordan, and McKnight have damaged the Company and are liable to the Company for contribution.

74.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company..

<u>COUNT III</u>

**Against the FVAC Defendants for Violation of Section 14 of the
Securities Exchange Act of 1934**

75.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

76.     Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omtis to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's proxy statement filed on May 14, 2021 violated §14(a) and Rule 14a-9 because solicited stockholder approval for the Business Combination while failing to disclose material facts about ATI's business.

77.     In the exercise of reasonable care, defendants should have known that the statements contained in the proxy statement were materially false and misleading.

78.     The misrepresentations and omissions in the proxy statement were material to Company shareholders in voting on the proxy statement. The Proxy Statement solicited shareholder votes for: (i) the Business Combination; (ii) issuance of shares; (iii) adoption of an amended and restated certificate of incorporation; (iv) governance provisions; (v) director

nominees; and (vi) incentive plan. The proxy statement was an essential link in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties.

79. The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statement.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of ATI, demands judgment as follows:

A. Declaring that plaintiff may maintain this action on behalf of ATI and that plaintiff is an adequate representative of the Company;

B. Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C. Declaring that Defendants have breached their fiduciary duties to ATI

D. Directing ATI to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect ATI and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1. a proposal to strengthen the Company's controls over financial reporting;

2. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3. a proposal to strengthen ATI's oversight of its disclosure procedures; and

4. a provision to permit the stockholders of ATI to nominate at least three candidates for election to the Board;

E.       Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of ATI has an effective remedy;

F.       Awarding to ATI restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.       Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.       Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: December 1, 2021

/s/ Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Fax: (212) 545-4653
malmstrom@whafh.com

*Local Counsel for Plaintiff Hamza Ghaith*

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
712 Fifth Avenue
New York, NY 10019
Telephone: (212) 935-7400
Facsimile: (212) 756-3630
bsachsmichaels@glancylaw.com

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150

Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: prajesh@glancylaw.com

*Attorneys for Plaintiff Hamza Ghaith*