**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE ATI PHYSICAL THERAPY, INC. ) <br> SHAREHOLDER DERIVATIVE ) <br> LITIGATION ) <br> ) <br> ) <br> ) | No. 1:21-cv-06415 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

This proposed class action represents the consolidation of three stockholder derivative suits brought by investors of ATI Physical Therapy, Inc., on behalf of the corporation and against current and former executives and board members alleged to have breached their fiduciary duties, violated the Securities Exchange Act of 1934, and engaged in unjust enrichment.[1] The operative complaint has undergone several amendments as a result of the consolidations. Now, the Plaintiffs seek to amend the complaint once more to include new claims against a subset of Defendants based on recent Delaware state-court decisions recognizing the actionability of direct claims based on the impairment of shareholder-redemption rights. R. 99, Mot. Amend.[2] The Defendants oppose the proposed amendment. R. 105, Defs.' Resp. Despite that opposition, for the reasons explained in this opinion, the Plaintiffs' motion is granted.

---

[1] The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

## I. Background

### A. Factual Allegations

Rather than an exhaustive summary, this background section is limited to those allegations from the currently operative complaint that are relevant to the Plaintiffs' current motion. This lawsuit arises from a 2021 "SPAC" (special-purpose acquisition company) transaction to take ATI—which provides physical-therapy services for rehabilitation—public.[3] It is unnecessary to delve into the exact characteristics of the SPAC transaction. Suffice to say that a SPAC is a shell company (with no operations of its own) that raises money through an initial public offering for the purpose of acquiring or merging with an existing, privately held company. R. 71, Consolidated Am. Compl. ¶ 53. The combined company then trades publicly, taking the place of the SPAC on a public exchange. *Id.* ¶ 54. Here, Fortress Investment Group LLC formed two companies to undertake a SPAC transaction: a SPAC called Fortress Value Acquisition Corp. II (FVAC for short), *id.* ¶ 2, and an LLC called Fortress Acquisition Sponsor II LLC (for convenience's sake, FAS). *Id.* ¶¶ 2, 4. The alleged purpose of this second, "sponsor" company was to carry out a merger for FVAC, and to buy and hold the "founders shares" that entitled it to elect all FVAC board directors prior to a successful SPAC combination. *Id.* ¶¶ 2, 23, 68.

---

[3] For readability, this Opinion will refer to both the pre-merger, private form and post-merger, public form of the Company as "ATI." When necessary, the Opinion will clarify if it is referring to the pre-merger or post-merger form.

2

In any case, FVAC went public on August 14, 2020, selling 34.5 million "units"[4] to investors at $10 each. Consolidated Am. Compl. ¶ 4. The $345 million raised by that public offering was placed in a trust account. *Id.* ¶ 5. Of particular importance to the Plaintiffs' pending motion, public investors had the right to redeem their FVAC public shares prior to the consummation of a merger for "approximately the same amount [per share] of their initial investment [$10], plus interest, minus some expenses." *Id.* ¶¶ 57, 96. Had a sufficiently large amount of FVAC stockholders redeemed their public shares, draining the trust account, FVAC would have been unable to effectuate the June 2021 merger with ATI that resulted in the combined company that now trades as "ATIP" on the New York Stock Exchange. *Id.* ¶¶ 87, 106. Crucially, there was no pre-merger mass-redemption event. All seemed settled.

But then, around one month after the merger, ATI issued its 2021 second-quarter results in late July 2020. The post-merger company disclosed increased attrition among its physical therapists, as well intensifying competition to hire them. Consolidated Am. Compl. ¶ 109. It consequently reduced its projections of revenue and new-store openings. *Id.* ¶ 12. ATI had not previously disclosed any problems with its retention and hiring. *Id.* ¶ 9. Because of that, the company's stock price fell over a couple of days to close at $3.82 per share on July 27. *Id.* ¶ 111. That was followed, around three months later, by a further reduction to revenue guidance on October 19. *Id.*

---

[4]"Each unit consisted of one share of Class A [FVAC] common stock and one-fifth of one warrant, with each warrant enabling the holder thereof to purchase one share of [FVAC] Class A common stock at a price of $11.50 per share." Consolidated Am. Compl. ¶ 4.

¶ 13. The Plaintiffs allege that the Defendants knew or should have known before the merger about the physical therapist hiring-and-retention problems, but waited to disclose them until after the transaction closed. *Id.* ¶¶ 3–11. That is because the Defendants allegedly had personal incentives to force through the merger, regardless of their obligations to the company. *Id.* ¶¶ 3–14. Because of this, Plaintiffs Kumar, Nie, Chang, and Reginbald—all ATI stockholders since December 2020, *id.* ¶¶ 18–21—brought this consolidated lawsuit against Fortress, FAS, and a group of individual defendants that includes former and current executives and directors of ATI, FVAC, and FAS. *Id.* ¶¶ 25–41 (full list of individual Defendants). Relatedly, because this is (mainly) a derivative action, ATI is named only as a nominal Defendant as the purported victim of the Defendants' alleged transgressions. *Id.* ¶ 22.

### B. Procedural History

In addition to that general background, it is also necessary to lay out the history of prior amendments to the pleadings. The Defendants point out that a new complaint would be the sixth in this case—not counting the separate but related federal-securities-law class action also before this Court, *Burbige, et al. v. ATI Physical Therapy, Inc., et al.* (21 C 04349). Defs.' Resp. at 2–5. On the surface, that seems like a lot. But setting aside *Burbige*—which is irrelevant to this Opinion—the Defendants' count of the pleadings includes the original complaints from the three shareholder derivative suits consolidated here, *Kumar* (22 C 02466), *Reginbald* (22 C 5111), and *Ghaith* (this case number). It also includes the two complaints that followed the separate *Kumar* and *Reginbald* consolidations, each filed without objection from the

4

Defendants. R. 45, Minute Entry (May 24, 2022) (granting unopposed motion to reassign *Kumar*); R. 50, Minute Entry (June 9, 2022) (granting unopposed joint motion to consolidate *Kumar* and *Ghaith*); R. 68, Minute Entry (Oct. 12, 2022) (granting joint motion to reassign *Reginbald* and consolidate it into this case). In effect, the August 5, 2022 consolidated complaint and the now-operative November 21, 2022 amended consolidated complaint each resulted from joint motions. In short, this is the first time that the Defendants have disputed an amendment.

Turning to that, the Plaintiffs argue that their proposed Second Amended Consolidated complaint is justified because of recent changes to Delaware law. A trio of Delaware state court decisions have, starting with *In re MultiPlan Corp. S'holders Litig.* in January 2022, recognized the actionability of "*direct claims* that center around the purported impairment of [shareholder] redemption rights" like the ones that FVAC shareholders enjoyed prior to the merger with legacy-ATI. 268 A.3d 784, 792 (Del. Ch. 2022) (emphasis added); *see also Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 709–10 (Del. Ch. 2023); *Laidlaw v. GigAcquisitions2, LLC*, No. 2021 0821 LWW, 2023 WL 2292488, at *6 (Del. Ch. Mar. 1, 2023). Generally, these decisions hold that the harms suffered because of a disloyal failure "to provide stockholders with the information necessary to decide whether to redeem [their shares] … produces an injury that would not run to the corporation[,]" but rather to the *individual* stockholders of pre-merger shares. *GigAcquisitions3*, LLC, 288 A.3d at 709; *In re MultiPlan*, 268 A.3d at 805 ("Defendants … induced … stockholders to forgo the opportunity to convert their Churchill shares into a guaranteed $10.04 per share in favor

5

of investing in Public MultiPlan. That claim is direct.") (cleaned up);[5] *GigAcquisitions2*, 2023 WL 2292488, at *6 ("Gig2 public stockholders suffered the harm alleged in the Complaint, which concerns the impairment of their right to redeem. This injury could not run to the corporation: the funds at issue belong to public stockholders, not the SPAC."). In other words, the claims are *direct* and not derivative because the "harms [suffered by the breach(es) of fiduciary duty] are individually compensable, separate, and distinct from any potential injury to [the company] caused by the merger." *GigAcquisitions3*, LLC, 288 A.3d at 709. The Plaintiffs here believe that their allegations would support two direct claims of that ilk, Mot. Amend at 1, and now want to add them.

## II. Legal Standard

Permission is needed to file the proposed amendment because it does not fall within the parameters of the one as-a-right amendment afforded under Federal Rule of Civil Procedure 15(a)(1). So Federal Rule of Civil Procedure 15(a)(2) applies. That rule explains that a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Defendant objects to the amendment.

District courts "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend is not automatic. *See Airborne*

---

[5] This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*Beepers & Video Inc. v. AT&T Mobility LLC*, 499 F.3d 633, 666 (7th Cir. 2007). "District courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 871-72 (7th Cir. 2011) (cleaned up). And although delay alone usually does not warrant denying leave to amend, the "longer the delay, the greater the presumption against granting leave to amend." *Johnson*, 641 F.3d at 872 (cleaned up). Ultimately, "the decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (cleaned up).

### III. Analysis

Based on this legal standard, the parties concentrate on arguments of undue delay and undue prejudice.[6] Starting with the first of these, the Defendants argue that Plaintiffs took much too long to file their motion to amend. That is because *In re MultiPlan* was decided in January 2022 and the Plaintiffs waited more than a year to propose the type of redemption-impairment direct claims first recognized in that case. Defs.' Resp. at 3. The Plaintiffs, in turn, recognize that their new redemption-impairment direct claims could have been asserted earlier but argue that their delay is "inconsequential … because Defendants have failed to establish the requisite

---

[6]The Court instructed the Defendants that "futility arguments, that is, arguments based on the failure of the proposed amended complaint to adequately state a claim, should not be the basis for the[ir] objection" to Plaintiffs' motion to amend. R. 98, Minute Entry (Feb. 17, 2023).

7

undue prejudice." R. 106, Pls. Reply at 2. They point out that "it is well-established that delay alone is an insufficient basis for denying a motion to amend." *Id.* That last part is true. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792–93 (7th Cir.2004) But it does not mean that delay is automatically inconsequential. Especially because in the year-plus that it took the Plaintiffs to try to assert their new direct claims, they filed two amended complaints: the August 5, 2022 consolidated complaint and the now-operative November 21 amended consolidated complaint. Given that delay, it is necessary to understand how disruptive another amendment would be to the course of the case, and to the efforts already expended. This goes to the related issue of undue prejudice.

    As to that, the case is still at the pleading stage. Discovery has not yet started. Mot. Amend at 5. And no dispositive motions have been decided. So allowing the Plaintiffs to amend their complaint to include their new direct claims would *not* trigger new discovery or take "the proceedings [backward and] in a new direction." *Allen v. Brown Advisory*, LLC, 41 F.4th 843, 853 (7th Cir. 2022). Yes, the amendment would result in the Defendants having to edit and refile their motions to dismiss. But importantly, the Defendants do not claim that those motions would need to be redrafted from scratch. Defs.' Resp. at 9–10. If the Defendants believe that the new direct claims should be dismissed, then they will add new sections addressing them, without discarding the work already done on the Plaintiffs' older claims. It is not surprising that the prejudice to the Defendants from Plaintiffs' delay is not excessive at this stage. "Undue delay is unusual at the pleading stage." *McCoy v. Iberdrola*

8

*Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014) (cleaned up). Instead, "[t]he issue of undue delay generally arises when a plaintiff seeks leave to amend deep into the litigation," when discovery is well underway or finished, or significant efforts have otherwise already been expended by the parties and the Court. *Id.* (compiling cases). This case now, by contrast, presents neither situation.

Having said that, it is true that, while rare, delay can cause undue prejudice at the pleading stage. The Defendants point to several such cases, but all of them are distinguishable. In *McCoy*, denial of amendment at the pleading stage was affirmed because "the parties had already invested significant resources in the case," in the form of the defendants "costs in defeating [plaintiff's] motion for a preliminary injunction." 760 F.3d at 687. In *King v. Schieferdecker*, the plaintiff had "already [twice] received a chance to amend his complaint to fix flaws cited in a motion to dismiss but failed to do so." 498 F. App'x 576, 579 (7th Cir. 2012) (non-precedential disposition).[7] Similarly, in *Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.* plaintiffs were given "four opportunities to file an adequate pleading" over six months. 912 F.3d 1049, 1053 (7th Cir. 2019). There, the prior amendments were sought because of deficiencies identified by defendants and unwitting mistakes by plaintiffs, like the filing on the docket of an unfinished draft. *Id.*

---

[7]The Defendants also cite to *Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750 (7th Cir. 2002), which is similar in its motion-to-amend analysis to *King v. Schieferdecker*. "Thompson delayed in filing a motion to amend, twice, until after the defendants had moved to dismiss." *Thompson*, 300 F.3d at 759.

Compare those situations with this case. Here, there have been no resources spent—by the Court or the parties—on TRO or preliminary-injunction motions, which generally are time-sensitive and demanding. The Plaintiffs here are also not seeking to amend their complaint because of flaws identified by the Defendants, but because of novel decisions recognizing the actionability of a new type of claim—though the Plaintiffs do admit to also seeking to present "a *refined* theory of recovery[] responsive to points raised in Defendants' motions to dismiss." Mot. Amend at 1 (emphasis added). And prior amendments to the complaint have not been the result of ineptitude or error, but rather of consolidations unopposed by the Defendants. In sum, the resources and efforts spent by the Defendants so far do not justify denial of the motion to amend at this early pleading stage—even with the delay discussed earlier. What's more, the reason for seeking another amendment does not smack of "procedural gamesmanship," inexcusable incompetence, or an attempt at piecemeal litigation. *Cf. McCoy*, 760 F.3d at 687 ("Outland['s] … unexplained delay looks more like procedural gamesmanship than legitimate ignorance or oversight."); *Doe v. Howe Mil. Sch.*, 227 F.3d 981, 990 (7th Cir. 2000) ("But pleading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark.").

That is not the end of the analysis, however. The Defendants also argue that allowing the Plaintiffs to proceed with their newly proposed redemption-impairment claims would be unduly prejudicial because the Defendants would then be forced to litigate identical claims simultaneously in multiple fora: here and Delaware. Defs.'

10

Resp. at 6–8. They point specifically to *Robinson v. Fortress Value Acquisition Sponsor II*, No. 2023 0142 LWW (Del. Ch.), a case pending before the Delaware Court of Chancery. *Id.* That case, according to the Defendants, asserts the same direct redemption-impairment claims that the Plaintiffs now seek to add on behalf the same putative class, former FVAC stockholders. *Id.* They argue that this duplication is a problem for purposes of the Plaintiffs' motion to amend because "when two cases with similar facts and claims proceed in different fora against the same defendants, it not only prejudices defendants by requiring them to expend additional resources, but also presents the very real and substantial risk of inconsistent judgments." *Id.* at 7. The Plaintiffs reply that there is no authority to support the argument that the pendency of similar or parallel litigation elsewhere constitutes grounds to deny a motion to amend. Pls.' Reply at 1. They are correct.

The Court is not aware of any case or statutory authority that stands for the position advocated by the Defendants—that a parallel action in a state court precludes amendment of the Plaintiffs' complaint. The cases that the Defendants cite arose in other contexts, like motions to stay. *See In re Allion Healthcare Inc. S'holders Litig.*, No. CIV.A. 5022 CC, 2011 WL 1135016, at *1 (Del. Ch. Mar. 29, 2011) (considering the question of how a fee award should be divided between "counsel for Delaware plaintiffs[,] who negotiated and reached the settlement with defendants[,] and counsel for New York plaintiffs[,] who were not party to the settlement, but had parallel litigation proceeding in New York"); *McCreary v. Celera Corp.*, No. 11 1618 SC, 2011 WL 1399263, at *3–6 (N.D. Cal. Apr. 13, 2011) (applying the *Colorado River*

doctrine to stay a parallel federal proceeding in favor of a Delaware action). So the Defendants' subpoint that Delaware has an interest in resolving the nascent legal area of redemption-impairment claims *might* be a factor relevant to a stay, for instance, but *not* to the current motion to amend.[8] In all, there is no basis to conclude that the *Robinson* action currently pending in Delaware generates undue prejudice for the Defendants. And ultimately, "the liberal standard for amending under Rule 15(a)(2) is especially important *where the law is uncertain." Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (emphasis added). That said, the Defendants can—as they suggest they will—move to stay or dismiss the Plaintiffs' new direct claims *after* the complaint is amended.[9] *See* Defs.' Resp. at 7 n. 8.

---

[8]For their state-interest sub-argument, Defs.' Resp. at 8, the Defendants again cite cases relevant to other contexts. *See, e.g.*, *Kimmel v. Wirtz*, No. 91 C 117, 1991 WL 277632, at *7 (N.D. Ill. Dec. 19, 1991) (summarizing a Delaware federal district court case that concluded that an action should be remanded to state court in part because of Delaware's "strong interest in the formation and termination of corporations under its laws"); *Armstrong v. Pomerance*, 423 A.2d 174, 179 (Del. 1980) (holding Delaware jurisdictional statute to be constitutional as applied to a set of directors and highlighting Delaware's interest in its corporate law in that context).

[9]The Court notes that in addition to new direct redemption-impairment claims, the Plaintiffs have also added a new direct unjust enrichment claim (Count 8) against the executives and directors of pre-merger ATI that approved the combination with FVAC. R. 104-1, Redacted Proposed SAC ¶¶ 212–15. The Plaintiffs do not explain how this claim is related to their new redemption-impairment claims, or why it could not have been asserted earlier. In any event, for the reasons discussed above, allowing it in the Second Amended Complaint would not unduly prejudice the Defendants.

## IV. Conclusion

Given the posture of the case and considering the liberal standard for amending under Rule 15(a)(2), the Plaintiffs' motion to amend their complaint is granted. *See Runnion*, 786 F.3d at 520 ("Applying the liberal standard for amending pleadings, especially in the early stages of a lawsuit, is the best way to ensure that cases will be decided justly and on their merits.") (cleaned up). The Plaintiffs shall file the amended pleading on the docket as a separate entry. The Defendants' response to the pleading is due on April 22, 2024. The parties shall file a status report on April 26, 2024, proposing a briefing schedule if dismissal motions are filed or a discovery schedule if an answer is filed.

ENTERED:

               s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2024