**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| *In re ATI Physical Therapy, Inc. Shareholder Derivative Litigation* | Case No. 1:21-cv-06415 |
| --- | --- |
| This Document Relates To: ALL ACTIONS | |

**PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. BACKGROUND AND SETTLEMENT NEGOTIATIONS ..... 3

A. Factual Background and Summary of the Actions ..... 3

B. Procedural History ..... 4

1. The Ghaith Action ..... 4

2. The Goldstein Action ..... 5

C. Settlement Negotiations ..... 6

III. THE SETTLEMENT TERMS ..... 7

IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL ..... 7

A. Applicable Legal Standards ..... 7

B. The Settlement Falls Within the Range of Possible Approval ..... 8

1. The Strength of Plaintiffs' Claims Balanced Against the Substantial Benefit Provided by the Settlement ..... 9

2. The Complexity, Expense, and Likely Duration of the Litigation ..... 11

3. The Proposed Settlement is a Product of Arm's-Length Negotiations ..... 12

4. The Stage of the Proceedings and the Amount of Discovery Completed ..... 13

5. The Opinion of Competent Counsel ..... 14

V. THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED ..... 14

VI. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

Cases Page(s)

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ..... 10

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ..... 8

*Bushansky v. Armacost*,
2014 WL 2905143 (N.D. Cal. June 25, 2014) ..... 15

*Dorvit on behalf of Power Sols. Int'l, Inc. v. Winemaster*,
950 F.3d 984 (7th Cir. 2020) ..... 8, 10, 11

*Evans on behalf of United Dev. Funding IV v. Greenlaw*,
2018 WL 2197780 (N.D. Tex. May 14, 2018). ..... 15

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ..... 14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..... 11

*In re Abbott Labs. Deriv. S'holders Litig*,
325 F.3d 795 (7th Cir. 2003). ..... 9

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ..... 13, 14

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000). ..... 12

*In re Bromine Antitrust Litig.*,
203 F.R.D. 403 (S.D. Ind. 2001) ..... 8

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996) ..... 11

*In re Fab Universal Corp. Shareholder Derivative Litig.*,
148 F. Supp. 3d 277 (S.D.N.Y. 2015) ..... 12

*In re Lloyd's Am. Tr. Fund Litig.*,
2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..... 11

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .......... 11

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .......... 9

*In re Rambus Inc. Derivative Litig.*,
2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .......... 15

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) .......... 15

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996). .......... 10

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991). .......... 9

*Lace v. Fortis Plastics LLC*,
2015 WL 1383806 (N.D. Ind. Mar. 24, 2015) .......... 12

*McCue v. MB Fin., Inc.*,
2015 WL 1020348 (N.D. Ill. Mar. 6, 2015).. .......... 8

*Oakland Cnty. Emps.' Ret. Sys. v. Massaro*,
772 F. Supp. 2d 973 (N.D. Ill. 2011) .......... 10

*Susquehanna Corp. v. Korholz*,
84 F.R.D. 316 (N.D. Ill. 1979) .......... 8, 12, 15

*United Food & Com. Workers Union & Participating Food Indus. Emps. TriState Pension Fund v. Zuckerberg*,
262 A.3d 1034 (Del. 2021) .......... 9

*United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*,
447 F.2d 647 (7th Cir. 1971). .......... 8

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014). .......... 14

Statutes

Fed. R. Civ. P. 23(c)(2) .......... 16

Fed. R. Civ. P. 23.1 .......... passim

Other Authorities

Manual for Complex Litigation (Fourth)
§13.14 (4th ed. 2004) ........................................................................................................ 8

Pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, plaintiffs Vinay Kumar, Ziyang Nie, Julia Chang, and Brendan Reginbald (collectively, the "*Gaith* Plaintiffs"), derivatively on behalf of ATI Physical Therapy, Inc. f/k/a Fortress Value Acquisition Corp. II ("ATI" or the "Company"), f/k/a Fortress Value Acquisition Corp. II ("FVAC"), respectfully submit this brief in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement of the derivative claims in this consolidated action (the "*Ghaith* Action").[1]

## I. INTRODUCTION

The Actions assert derivative claims and direct claims for breaches of fiduciary duty,[2] unjust enrichment, contribution, indemnification, aiding and abetting breaches of fiduciary duty, and violations of the Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against individual defendants Labeed S. Diab, Joseph Jordan, John L. Larsen, John Maldonado, Carmine Petrone, Joanne M. Burns, Christopher Krubert, James E. Parisi, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, Cedric Coco, Ray Wahl, Daniel Bass, Micah Kaplan, and Teresa Sparks (collectively, the "Individual Defendants"); entity defendants Fortress Investment Group LLC and Fortress Acquisition Sponsor II LLC (collectively, the "Entity Defendants"); and nominal defendant ATI (together with the Individual Defendants and the Entity Defendants, the

---

1 The Settlement also resolves derivative claims in a related action in the Delaware Court of Chancery, brought by plaintiff Phillip Goldstein ("Goldstein") and captioned *Goldstein v. Diab, et al.*, C.A. No. 2023-0582-NAC (Del. Ch.) (the "*Goldstein* Action," together with the *Ghaith* Action, the "Derivative Actions"; and Goldstein together with the *Gaith* Plaintiffs, "Plaintiffs").

2 The Settlement here resolves only the derivative claims. The direct claims are being resolved through the settlement of the related federal securities class action captioned *Burbige, et al. v. ATI Physical Therapy, Inc. f/k/a Fortress Value Acquisition Corp. II, et al.*, No. 1:21-cv-04349 (N.D. Ill.) (the "Securities Action").

"Defendants," and together with Plaintiffs, the Individual Defendants, and the Entity Defendants, the "Parties").[3]

The Settlement is the culmination of hard-fought, arm's-length negotiations by experienced and well-informed counsel, facilitated by former U.S. District Judge Layn Phillips and his team at Phillips ADR Enterprises (the "Mediator"). Pursuant to the terms of the Settlement, the Individual Defendants shall cause their insurers to pay $6.45 million to the Company (the "Cash Payment").

At the preliminary approval stage, the Court need only conclude that the proposed Settlement is within the range of resolutions that might ultimately be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to current ATI stockholders, and that a final hearing should be scheduled to determine whether to approve the Settlement. The Settlement also includes the Parties' agreement on the Fee and Expense Amount for Plaintiffs' Counsel and Service Awards for Plaintiffs, both of which are also subject to Court approval.

Plaintiffs respectfully submit that the Settlement terms meet this standard and request that the Court enter an order: (i) preliminarily approving the Settlement, (ii) approving the form and method for providing notice to current ATI stockholders; and (iii) scheduling the Settlement Hearing. Defendants do not oppose this motion or any of the requested relief.

[3] Unless noted otherwise, all capitalized terms used herein shall have the same meaning as set forth in the Stipulation of Settlement dated May 28, 2024 (the "Stipulation," or "Stip."), which is attached hereto as Exhibit 1.

## II. BACKGROUND AND SETTLEMENT NEGOTIATIONS

### A. Factual Background and Summary of the Actions

FVAC was formed as a special purpose acquisition company, or SPAC, with no operations of its own but whose initial public offering proceeds are used to acquire a company. ¶¶2, 5, 74.[4] On June 16, 2021, FVAC completed the merger with Wilco Holding, Inc., and proceeded to operate under the name ATI Physical Therapy, Inc. ¶¶4, 24. ATI is a national healthcare company that specializes in outpatient rehabilitation and adjacent healthcare services. ¶8.

Less than two months after the merger closed, on July 26, 2021, ATI revealed that severe physical therapist attrition issues and higher labor costs resulted in drastically reduced financial guidance. ¶14. Moreover, the Company had only opened 55 to 65 new clinics, short of promised 90 clinics. *Id.* On this news, the Company's share price fell from $8.32 per share to just $4.72 per share. *Id.* Then, on October 19, 2021, ATI reduced its guidance further, resulting in further declines in its stock price. ¶15.

Plaintiffs allege, *inter alia*, that Defendants made or caused the Company to make false and misleading statements, breached their fiduciary duty, unjustly enriched themselves and caused the shareholders to vote to approve the merger, causing severe financial harm to ATI. ¶¶161-229. Specifically, Plaintiffs allege Defendants solicited approval of the merger on the basis of a materially misleading proxy statement, which concealed that: (a) ATI was experiencing attrition among its physical therapists; (b) ATI faced increasing competition for physical therapists in the labor market; (c) ATI lacked the number of physical therapists necessary to accomplish its expansion plans; and (d) as a result of the foregoing, the Company faced difficulties retaining

---

[4] Citations to "¶ _" refer to the *Gaith* Plaintiffs' Verified Consolidated Second Amended Complaint (the "Second Amended Complaint") filed on April 2, 2024. D.E. 124.

therapists and incurred increased labor costs. ¶¶8, 16. Plaintiffs further allege that certain of Defendants and aided and abetted these breaches of fiduciary duties. ¶12. Finally, Plaintiffs allege that the supposed outside members of the FVAC Board breached their fiduciary duties by knowingly and consciously failing to perform proper due diligence about ATI's business prospects prior to the merger. ¶¶10, 12.

### B. Procedural History

#### 1. The *Ghaith* Action

On December 1, 2021, Plaintiff Hamza Ghaith ("Ghaith") filed a verified shareholder derivative complaint against Defendants, asserting claims for breach of fiduciary duties, violations of Sections 10(b) and 21D of the Exchange Act, and violation of Sections 14(a) of the Exchange Act. D.E. 1. On May 10, 2022, Plaintiff Vinay Kumar commenced a substantially similar derivative action, and on June 2, 2022, Plaintiffs Kumar and Ghaith moved to consolidate their cases to appoint their counsel as lead counsel and liaison counsel. D.E. 46. On June 9, 2022, the Court granted that motion. D.E. 50. On August 5, 2022, Plaintiffs Kumar, Nie, and Julia Chang ("Chang"), filed a consolidated amended complaint against Defendants, asserting claims for breach of fiduciary duties, unjust enrichment, waste of corporate assets, violations of sections 14(a) and 10(b) of the Exchange Act as well as contribution and indemnification under Delaware law. D.E. 61.

Before Defendants' response to the consolidated amended complaint was due, on September 22, 2022, Plaintiff Brendan Reginbald ("Reginbald") filed a verified stockholder derivative complaint against Defendants, asserting substantially similar facts and claims. On October 7, 2022, Plaintiffs Chang, Kumar, Nie, and Reginbald moved to consolidate their cases, amend appointment of co-lead counsel to include Reginbald's counsel, and set a schedule, which the Court granted. D.E. 67-68. On November 21, 2022, Plaintiffs Kumar, Nie, Chang, and

Reginbald filed a consolidated amended complaint under seal. D.E. 69. On December 7, 2022, the Court granted the Parties' amended schedule. D.E. 72-73.

On January 20, 2023, Defendants filed their motions to dismiss the consolidated amended complaint. D.E. 80-81, 88-90. On February 10, 2023, the Parties filed a joint motion to set a briefing schedule for Plaintiffs' motion for leave to amend the consolidated amended complaint and modification of the scheduling order. D.E. 96. On February 17, 2023, the Court directed Plaintiffs to file the motion for leave to amend by March 3, 2023, and Defendants to respond by March 24, 2023. D.E. 98.

On March 3, 2023, Plaintiffs moved for leave to amend their complaint and file the proposed Second Amended Complaint, attaching the proposed Second Amended Complaint under seal. DE. 100. The motion was fully briefed on April 4, 2023. DE. 105-106. The Court took the motion for leave to amend under advisement.

On March 31, 2024 the Court granted Plaintiffs' motion for leave to file the Second Amended Complaint. D.E. 122. On April 2, 2024, the Plaintiffs filed the Second Amended Complaint under seal and publicly. D.E. 123, 124.

On April 24, 2024, the Parties filed a joint motion requesting a stay of all deadlines and proceedings, informing the Court that the Parties had reached agreements-in-principle to resolve all claims in this action and the related securities class action. D.E. 131. On April 30, 2024, the Court stayed deadlines and directed the Parties to file the motion for preliminary approval of the settlement by May 30, 2024. D.E. 136.

**2. The *Goldstein* Action**

On June 1, 2023, Goldstein filed a dual putative class action and stockholder derivative complaint in the Delaware Court of Chancery against Defendants Diab, Jordan, Coco, Wahl, Larsen, Maldonado, Petrone, Burns, Krubert, Parisi, McKnight, Pack, Furstein, Cowen, Hood,

Policy, Russak-Aminoach, and Gulati (collectively, with Fortress Acquisition Sponsor II, LLC, Daniel Bass, and Micah Kaplan, the "*Goldstein* Defendants"). On August 8, 2023, Goldstein filed an amended complaint, adding Fortress Acquisition Sponsor II, LLC, Daniel Bass, and Micah Kaplan as defendants, and asserting direct claims for tortious interference, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty on behalf of stockholders who were entitled to, but did not, redeem their FVAC shares prior to the merger, as well as derivative claims for fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty on behalf of ATI. On October 6, 2023, the court granted a motion to stay the *Goldstein* Action pending resolution of motions to dismiss in the related class action styled as *Robinson v. Fortress Acquisition Sponsor II, et al.*, C.A. No. 2023-0142-NAC (Del. Ch.) (the "*Robinson* Action").[5]

**C. Settlement Negotiations**

In January 2024, the Parties began engaging in settlement discussions supervised by the Mediator. Though these initial settlement discussions did not lead to a settlement, a framework for potential resolution was discussed, and the Parties agreed to participate in a formal, in-person mediation session. On March 7, 2024, the Parties, along with the parties to the *Robinson* Action and the Securities Action, participated in an in-person mediation session with the Mediator but did not reach a resolution at that time. The Parties continued settlement discussions following the March 7, 2024 mediation under the supervision of and facilitated by the Mediator.

---

5 The *Robinson* Action asserts direct claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, on behalf of similarly situated record and beneficial FVAC Class A common stock holders who were entitled to, but did not, redeem their FVAC shares prior to the merger against defendants Fortress Acquisition Sponsor II, LLC, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, Daniel N. Bass, Micah B. Kaplan, and Labeed Diab in the Delaware Court of Chancery.

On March 12, 2024, the Parties participated in another mediation with the Mediator via Zoom in an attempt to reach a resolution of the claims. No resolution was reached at the March 12, 2024 mediation; however, extensive negotiations followed the March 12, 2024 mediation session, including separate caucus sessions, joint sessions, and email communications with the Mediator and counsel.

On April 22, 2024, the Mediator issued, and the Parties accepted, a double-blind Mediator's Recommendation which resolved all claims (both derivative and direct) asserted in the *Ghaith* Action, the *Goldstein* Action, the Securities Action, and the *Robinson* Action (collectively, the "Actions").

## III. THE SETTLEMENT TERMS

The Settlement requires the Individual Defendants to cause their Side A D&O insurance carriers to pay $6.45 million ($6,450,000) to the Company exclusively for the release of the derivative claims asserted in the Derivative Actions.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A. Applicable Legal Standards

A derivative action "may be settled... only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Court approval of a derivative settlement involves two steps: (1) determining whether the proposed Settlement appears to fall within the range of possible approval such that notice of the settlement should be provided to stockholders, referred to as preliminary approval; and (2) after such notice has been provided, holding a fairness hearing to determine whether the settlement is fair, reasonable, and adequate, referred to as final

approval. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) §13.14 (4th ed. 2004) (setting forth the approval procedure for settlement of a shareholder derivative action).[6]

The Court will have before it detailed papers submitted in support of the Settlement at the final settlement hearing so that it may determine whether the Settlement is fair, reasonable, and adequate and in the best interest of those whose claims will be extinguished. *See id.* at 319. Here, Plaintiffs seek only preliminary approval of the proposed Settlement and the Court's permission to notify ATI's stockholders of the Settlement's terms. At the preliminary approval stage, the Court need only assess "whether the proposed settlement is within the range of possible approval[.]" *Armstrong v. Bd. of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 314 (7th Cir.1980); *see also*, *McCue v. MB Fin., Inc*., 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015). Notably, the threshold for preliminary approval is low. *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). The Settlement here easily meets this standard.

**B. The Settlement Falls Within the Range of Possible Approval**

Plaintiffs respectfully submit that the proposed Settlement is well within the range of possible approval. The Settlement was negotiated at arm's-length by experienced and fully informed counsel and provides substantial benefits to ATI and its stockholders, particularly in light

[6] In determining whether to approve a proposed derivative settlement, the Court should "weigh the probabilities and possibilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interest of the corporation and all its shareholders." *United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co*., 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations removed); *Dorvit on behalf of Power Sols. Int'l, Inc. v. Winemaster*, 950 F.3d 984, 988 (7th Cir. 2020). The following factors may inform the Court during the final approval stage: (1) the strength of the plaintiff's case on the merits, balanced against the benefits of the settlement; (2) the complexity, length, and expense of continued litigation; (3) whether the settlement negotiations involved collusion; (4) the opinion of knowledgeable counsel; and (5) the stage of the proceedings, including the amount of discovery completed. *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 319-20 (N.D. Ill. 1979).

of the risks, complexity and duration of continued litigation, therefore, consideration of the relevant legal factors supports that the proposed Settlement is fair, reasonable, and adequate.

**1. The Strength of Plaintiffs' Claims Balanced Against the Substantial Benefit Provided by the Settlement**

Upon approval of the proposed Settlement, a cash payment will be made to ATI in the amount of $6.45 million. This material monetary recovery to the Company, which is atypical in derivative settlements, is strong evidence that the settlement is within the range of possible approval and should be granted preliminary approval. The Cash Payment is valuable consideration for the release of derivative claims and well-within a range of reasonability, especially considering the potential risks to securing any relief. While Plaintiffs believe that their claims are meritorious, establishing liability was not a foregone conclusion. As fiduciaries of the Company and its stockholders, Plaintiffs and their counsel were obligated to weigh their belief in the strength of their claims against the reality that "the odds of winning [a] derivative lawsuit [are] extremely small." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Plaintiffs acknowledge the risk that the Derivative Actions would not have withstood the Defendants' anticipated motion to dismiss, especially given the heightened pleading requirements under Fed. R. Civ. P. 23.1 for demand futility, which is satisfied only under "extraordinary conditions." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991). *See also In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003) ("[D]emand can only be excused where facts are alleged with particularity which create a reasonable doubt that the directors' action was entitled to the protections of the business judgment rule"). When Defendants previously moved to dismiss in January 2023, they argued that demand was not excused under any of the three prongs of *United Food & Com. Workers Union & Participating Food Indus. Emps. TriState Pension Fund v. Zuckerberg*, 262 A.3d 1034 (Del. 2021) (demand only excused where complaint

alleges with particularity that majority of board is conflicted due to: (i) having received a material personal benefit from challenged transaction; (ii) facing a substantial likelihood of liability; or (iii) lacking independence from a conflicted director). D.E. 81, at 10-11. Specifically, Defendants argued that the derivative claims were "failure to monitor" claims often characterized as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id.* at 10 (citing *Oakland Cnty. Emps.' Ret. Sys. v. Massaro*, 772 F. Supp. 2d 973 (N.D. Ill. 2011)). Plaintiffs anticipate that Defendants would have made the same argument in renewed motions to dismiss.

Even if and once this hurdle was overcome, "continuation of the litigation would require the resolution of many difficult and complex issues, would entail considerable additional expense, and would likely involve weeks, perhaps months, of trial time." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Because the derivative claims allege the issuance of misleading statements, and oversight claims require bad faith, the Individual Defendants would have continued to make factual arguments regarding whether they acted with the necessary state of mind.

When balanced against "the uncertain and unknowable benefits of litigation, the benefits of this settlement agreement to [Suralign and its stockholders] are significant." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *5 (N.D. Ill. Feb. 28, 2012). The substantial Cash Payment, described *infra*, confers tangible, meaningful benefits to ATI and its stockholders, especially in light of the risks of no or delayed recovery for the Company. Therefore, the settlement, when balanced against the uncertain prospects for prevailing at trial, is decidedly adequate and fair and reasonable to all concerned, and weighs in favor of granting preliminary approval. *See In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996); *Dorvit*, 950 F.3d at 988.

**2. The Complexity, Expense, and Likely Duration of the Litigation**

The Plaintiffs acknowledge that the Defendants would continue to vigorously dispute the claims asserted, and recognize the risk, uncertain outcome and the risk of any litigation, especially in complex actions such as the Derivative Actions and the Securities Action, as well as the difficulties and delays inherent in such litigation. *See* Stip., §II. *See also In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) ("Defendants are highly motivated to defend these cases vigorously….[C]ontinued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time"). Plaintiffs and Plaintiffs' Counsel are also mindful of the inherent problems of proof of, and possible defenses to, the claims asserted in the Action. *Id*. Shareholder derivative actions are notoriously complicated, and the Action, which involves alleged claims dating back years, would have been no exception. *See In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d at 967; *see also Dorvit*, 950 F.3d at 988.

Establishing damages and loss causation would be unpredictable and involve a battle of experts. Even if Plaintiffs were to prevail on the claims and establish liability, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. *See In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) (establishing recoverable damages is a "complicated and uncertain process, typically involving conflicting expert opinions," to which "[t]he reaction of a jury … is highly unpredictable."); *Glickenhaus & Co. v. Household Int'l, Inc.,* 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation). Numerous complexities could confound Plaintiffs' attempts to collect on any judgment after establishing liability. For example, the Individual Defendants would likely claim that the Company was required to indemnify them for any damages. The Company, in turn, is in a precarious financial

state and its ability to indemnify the Individual Defendants is in question. Due to these factors, attempts to collect a judgment from the Individual Defendants could result in protracted and lengthy additional litigation.

The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after years of litigation, while ensuring that ATI receives $6.45 million, therefore this factor supports preliminary approval.

**3. The Proposed Settlement is a Product of Arm's-Length Negotiations**

In determining the fairness of a proposed settlement, courts consider whether the settlement was the product of good faith bargaining at arm's-length without collusion. *Susquehanna*, 84 F.R.D. at 319–20. Here, the terms of the Settlement were only agreed upon after arm's-length negotiations, by counsel with extensive experience in derivative and securities litigation, with the extensive assistance of the Mediator. *See* Stip., §I, C. Where a settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex . . . litigation, the [s]ettlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). Courts have found that a mediator's involvement in settlement supports the notion that a settlement was negotiated at arm's-length and is therefore fair and reasonable. *See In re Fab Universal Corp. Shareholder Derivative Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) ("The Proposed Settlement was the product of extensive formal mediation aided by a neutral JAMs mediator, hallmarks of a non-collusive, arm's-length settlement process.").

Thus, this factor supports preliminary approval. *See Lace v. Fortis Plastics LLC*, 2015 WL 1383806, at *3 (N.D. Ind. Mar. 24, 2015) (granting preliminary approval and noting that the "Settlement Agreement appears to be the product of earnest, informed, arm's length, and non-collusive negotiations; it has no obvious deficiencies").

### 4. The Stage of the Proceedings and the Amount of Discovery Completed

The relevant inquiry under this factor is whether the parties have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,* 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). Here, Plaintiffs and their counsel obtained sufficient information about the facts underlying the claims to evaluate the proposed Settlement, by, among other things:

(i) reviewing ATI's press releases, public statements, SEC filings, and securities analysts' reports and advisories about the Company;

(ii) reviewing media reports about the Company;

(iii) researching the applicable law with respect to the claims alleged in the Derivative Actions and the potential defenses thereto;

(iv) preparing and filing multiple complaints in the Derivative Actions;

(v) reviewing and analyzing relevant pleadings in the Securities Class Action, and evaluating the merits of, and Defendants' liability in connection with, the Securities Class Action and the Derivative Actions;

(vi) separately reviewing and evaluating nearly 2,600 pages of non-public documents produced by Defendants in response to inspection demands for books and records pursuant to 8 *Del. C.* § 220 served by plaintiffs Reginbald and Goldstein;

(vii) participating in extensive settlement discussions with Defendants' Counsel, including an in-person mediation in New York City and a second mediation with the Mediator via Zoom, as well as numerous separate caucus sessions, joint sessions, and email communications with the Mediator and counsel; and

(viii) negotiating the terms of this Stipulation. *See* ¶1, Stip., §II.

The accumulation of the information discovered through those efforts permitted Plaintiffs' Counsel to be well-informed in evaluating the risks of continued litigation and to have sufficient information to support the decision regarding the fairness, adequacy, and reasonableness of the Settlement. *Id.* Plaintiffs and Plaintiffs' Counsel were well informed and fully appreciate the merits

of the case, and therefore this factor supports preliminary approval. *In re AT & T,* 789 F. Supp. 2d at 966.

### 5. The Opinion of Competent Counsel

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir.1982) (courts are "entitled to rely heavily on the opinion of competent counsel"); *see also Wong v. Accretive Health, Inc.,* 773 F.3d 859, 864 (7th Cir. 2014) (counsel accepting mediator's proposal were highly experienced and weighed in favor of affirming district court's approval of securities settlement).

Here, counsel for the Parties were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses and support the Settlement. *See* Stip., §§IV, ¶8.3. The Settlement was reached only after extensive arm's-length negotiations with a firm understanding of the factual and legal issues presented and the relative strengths and weaknesses of their respective claims and defenses, as described above, the assessments of counsel for the Parties are entitled to great deference. *Accretive*, 773 F.3d at 864.

For the forgoing reasons, the Settlement thus falls within the range of possible approval.

## V. THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED

The form and manner of the proposed notice constitute the best notice practicable under the circumstances and satisfy the requirements of Fed. R. Civ. P. 23.1, due process, and all applicable governing law. As set out in the Stipulation, the Settlement Notice will inform Current ATI Stockholders of the claims alleged in the Derivative Actions, the terms of the Settlement, and their rights as settlement claims members to opt or object to the Settlement. The Stipulation sets out that, within fourteen (14) business days following entry of the proposed Preliminary Approval Order, ATI shall: (i) post a copy of the Notice, substantially in the form of Exhibit A-1 to the Stipulation, and the Stipulation itself, together with the exhibits attached hereto, on the Company's

website, which will remain on the website through the date of the Settlement Hearing; (ii) file with the SEC a Current Report on Form 8-K briefly describing the Settlement and stating where ATI stockholders can locate this Stipulation and the Notice on ATI's website; and (iii) issue the Summary Notice via press release on *Business Wire*. Stip., §IV, ¶3.3.

The proposed Settlement Notice describes, *inter alia*: (i) the nature of the litigation, the claims asserted therein, the Parties' negotiations and reasons for settling; (ii) the Settlement terms; (iii) the procedure for objecting to the Settlement; (iv) the date of the Settlement Hearing; and (v) the amount Plaintiffs' Counsel will seek in fees and expenses and potential payment of Service Awards to the Plaintiffs. Stipulation, Exhibits A-1, A-2. The proposed Settlement Notice therefore "reasonably apprises the members of the class of the terms of the settlement and of the options open to those who wish to dissent." *Susquehanna*, 84 F.R.D. at 324.

The Settlement Notice complies with Fed. R. Civ. P. 23.1 and due process and is similar to those approved in other stockholder derivative cases. *See Evans on behalf of United Dev. Funding IV v. Greenlaw*, 2018 WL 2197780, at *4 (N.D. Tex. May 14, 2018) (notice of the settlement to be filed with the SEC together with a Form 8-K and to be published in *Investor's Business Daily*); *Bushansky v. Armacost*, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014) (notice of dismissal plan, requiring a link on defendant's website, a press release to be issued, and a Form 8-K filing); *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (same).

Therefore, as the Settlement Notice weighs in favor of preliminary approval as the form and manner of the proposed notice constitute the best notice practicable under the circumstances and satisfy the requirements of Fed. R. Civ. P. 23.1, due process, and all applicable governing law. Fed. R. Civ. P. 23(c)(2), *In re TikTok, Inc., Consumer Priv. Litig.,* 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021).

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Settlement is within the range of approval and request that the Court preliminarily approve the Settlement, direct the issuance of the notice of the Settlement, and schedule the Settlement Hearing to consider final approval of the Settlement.

Date: May 28, 2024

Respectfully submitted,

*/s/ Carl V. Malmstrom*

Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 West Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
E-mail: malmstrom@whafh.com

*Liaison Counsel for Plaintiffs*

**ROBBINS LLP**
Brian J. Robbins
Craig W. Smith
Gregory E. Del Gaizo
Shane P. Sanders
5060 Shoreham Place. Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
csmith@robbinsllp.com
gdelgaizo@robbinsllp.com
ssanders@robbinsllp.com

**JOHNSON FISTEL LLP**
Michael I. Fistel, Jr.
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
E-mail: MichaelF@johnsonfistel.com

Frank J. Johnson
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
E-mail: FrankJ@johnsonfistel.com

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue, Fifth Floor
New York Avenue, NY 10151
Telephone: (212) 935-7400
Facsimile: (212) 756-3630
Email: bsachsmichaels@glancylaw.com

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
prajesh@glancylaw.com

*Co-Lead Counsel for Plaintiffs*